USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/19/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER TACKNEY and ANGELA
TACKNEY,

              Plaintiffs and Counter-Defendants,

              - against -

WB IMICO LEXINGTON FEE, LLC,

              Defendant and Counter-Claimant.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 2734 (PGG)

WILLIAM ABRAMS and SOO WON HWANG,

              Plaintiffs and Counter-Defendants,

              - against -

WB IMICO LEXINGTON FEE, LLC,

              Defendant and Counter-Claimant.

10 Civ. 2735 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs are purchasers of condominium units in "The Lucida," a condominium

development in Manhattan sponsored and developed by Defendant WB Imico Lexington Fee,

LLC. Plaintiffs allege that Defendant violated several provisions of the Interstate Land Sales

Full Disclosure Act, 15 U.S.C. §§ 1701-20 ("ILSA" or the "Act") in connection with the sale of

those units, and that they are therefore entitled to rescind their purchase agreements and recover

their deposits pursuant to ILSA. (10 Civ. 2734 Am. Cmplt. (Dkt. No. 21); 10 Civ. 2735 Am.

Cmplt. (Dkt. No. 19)) Defendant argues that it complied with ILSA's requirements and asserts

counterclaims for breach of contract, alleging that Plaintiffs refused to pay the balance owed for

the units and to close title as required by their purchase agreements. (10 Civ. 2734 Answer (Dkt. No. 22); 10 Civ. 2735 Answer (Dkt. No. 20))

The Complaints in these actions were filed on March 26, 2010. (10 Civ. 2734 Cmplt. (Dkt. No. 1); 10 Civ. 2735 Cmplt. (Dkt. No. 1)) The initial conference was adjourned sine die, pending resolution of motions for summary judgment in five related actions ("the Related Actions")[1] that had been brought by other purchasers of units in The Lucida against Defendant. (10 Civ. 2734 Oct. 11, 2011 Order (Dkt. No. 13); 10 Civ. 2735 Oct. 11, 2011 Order (Dkt. No. 11))

On September 27, 2013, this Court issued a decision granting Defendant summary judgment in four of the Related Actions, and awarding summary judgment to plaintiffs in Rai v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9586 (PGG), the last of the Related Actions. See Rai v. WB Imico Lexington Fee, LLC, Nos. 09 Civ. 9586 (PGG), 09 Civ. 9609 (PGG), 09 Civ. 9610 (PGG), 09 Civ. 9611 (PGG), 09 Civ. 9612 (PGG), 2013 WL 5420940, at *11 (S.D.N.Y. Sept. 27, 2013) (the "September 2013 decision").

On January 13, 2014, Plaintiffs in the instant action filed Amended Complaints. (See 10 Civ. 2734 Am. Cmplt. (Dkt. No. 21); 10 Civ. 2735 Am. Cmplt. (Dkt. No. 19)) On January 24, 2014, Defendant filed answers and asserted counterclaims for breach of contract. (10 Civ. 2734 Answer (Dkt. No. 22); 10 Civ. 2735 Answer (Dkt. No. 20))

On January 24, 2014, Plaintiffs moved for summary judgment on the first and third claims of their Amended Complaints, which allege that Defendant violated ILSA by failing

---

[1] The Related Actions are Rai v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9586 (PGG), Hakell Limited Inc. v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9609 (PGG), Benhamou v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9610 (PGG), Bauer v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9611 (PGG), and Ezzes v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9512 (PGG).

to adequately describe the purchased units in Plaintiffs' purchase agreements, and by failing to deliver the property report for The Lucida to Plaintiffs before they executed their purchase agreements. (Pltf. Br. (Dkt. No. 43)[2]) Defendant has moved for summary judgment on all of Plaintiffs' claims and on its breach of contract counterclaims. (Def. Br. (Dkt. No. 42))

For the reasons stated below, Defendant's motions for summary judgment on Plaintiffs' claims and on its breach of contract counterclaim will be granted. Plaintiffs' motions for summary judgment will be denied.

## BACKGROUND

I.    FACTS[3]

The Lucida is a condominium development located at 151 East 85th Street, New York, New York. (Joint Stip. (Dkt. No. 45) ¶ 2) Each Plaintiff executed a substantially similar purchase agreement for a condominium unit in The Lucida, and each paid Defendant a deposit pursuant to those agreements. (Id. ¶¶ 10, 13) The Tackneys executed their agreement on July 26, 2007, and Abrams and Hwang executed their agreement on July 30, 2007. (Id. ¶ 10)

Prior to executing the purchase agreements, each Plaintiff signed a "Purchaser Receipt," acknowledging receipt of the property report for The Lucida. (Id. ¶¶ 8-10 & Exs. B, D) The receipt signed by the Tackneys is dated July 5, 2007, and the receipt signed by Abrams and Hwang is dated July 27, 2007. (Id., Exs. B, D) The Purchaser Receipt states in relevant part:

---

[2] Plaintiffs filed joint summary judgment papers. Unless otherwise indicated, citations to these joint submissions will be to their docket numbers on the Tackney docket (No. 10 Civ. 2734).
[3] The Court's factual statement is drawn primarily from a Stipulation of Fact entered into by all parties. (Dkt. No. 45) Familiarity with this Court's prior opinions and orders in the Related Actions is presumed, however.

> We must give you a copy of this Property Report and give you an opportunity to read it before you sign any contract or agreement. By signing this receipt, you acknowledge that you have received a copy of our Property Report.

(Id., Exs. B, D)

While all Plaintiffs signed a receipt indicating that they had received a copy of the property report for their condominium before executing the purchase agreement, it is likewise undisputed that Defendant did not give a copy of the property report directly to any of the Plaintiffs. (Id. ¶¶ 8-9)

As to Abrams and Hwang, Defendant sent a copy of the property report to an attorney named Bruce Cohen. (Id. ¶ 8) Abrams and Hwang claim that they were never represented by Cohen and that – despite the signed receipt in which they acknowledge receiving a copy of the property report – they never received a copy of the property report. (Abrams Decl. (Dkt. No. 39) ¶¶ 5-7; Hwang Decl. (Dkt. No. 41) ¶¶ 5-7) According to Defendant, the "Contract Information Sheet" that was filled out by Defendant's sales agent when Abrams and Hwang expressed interest in purchasing a unit in The Lucida lists Cohen as their attorney. (Feb. 21, 2014 Genack Aff. (Dkt. No. 47) ¶ 3 & Ex. N) Defendant also claims that on July 17, 2007 – after Abrams notified Defendant that he and Hwang had retained attorney Scott Claman to represent them in the transaction – all documents that had previously been sent to Cohen, including the property report, were provided to Claman. (Id. ¶¶ 4-5)

As to the Tackneys, Defendant sent a copy of the property report to their attorney, Danielle Epstein-Day. (Joint Stip. (Dkt. No. 45) ¶ 9) The Tackneys "acknowledge that the Property Report had been delivered to [their] attorney," but do not state whether they received a copy of the report. (See C. Tackney Decl. (Dkt. No. 35) ¶¶ 5-6; A. Tackney (Dkt. No. 37) ¶¶ 5-6)

4

The purchase agreements executed by Plaintiffs incorporate by reference the offering plan for The Lucida (the "Offering Plan"). (See Jan. 24, 2014 Haas Decl. (Dkt. No. 38), Exs. H, I) Tax lot numbers for each individual unit are not provided in the purchase agreements, however, nor are they set forth in the Offering Plan incorporated therein. (Joint Stip. (Dkt. No. 45) ¶¶ 11, 12)

Within two years of executing their respective purchase agreements, Plaintiffs sent notices to Defendant purporting to revoke their purchase agreements due to Defendant's alleged failure to comply with ILSA's disclosure requirements. (See id. ¶ 14) The revocation letter sent by Abrams and Hwang is dated July 27, 2009, and the Tackneys' revocation letter is dated July 24, 2009. (Id.) Plaintiffs likewise demanded the immediate return of their respective deposits. (Id.) Defendant has not returned to Plaintiffs any portion of their deposits. (Id. ¶ 15)

## II.   THIS COURT'S SEPTEMBER 27, 2013 DECISION IN THE RELATED ACTIONS

The Related Actions were filed on November 18, 2009. See Rai, 2013 WL 5420940, at *2. Plaintiffs in the Related Actions argued that – in connection with their purchase of condominium units in The Lucida – Defendant violated ILSA by (1) failing to list a tax lot number for each unit in plaintiffs' purchase agreements, as 15 U.S.C. § 1703(d)(1) allegedly required; and (2) including damages provisions in plaintiffs' purchase agreements that do not comply with 15 U.S.C. § 1703(d)(3). See Rai, 2013 WL 5420940, at *2. In one of the actions, plaintiffs Aviral Rai and Sangeeta Rai further alleged that Defendant had violated 15 U.S.C. § 1703(a)(1)(B) by failing to furnish a copy of the property report for the condominium to them before they executed their purchase agreement. Rai, 2013 WL 5420940, at *2. Defendant alleged that plaintiffs had breached the purchase agreements by failing to pay the remainder of

the purchase price and by failing to close on the designated closing date. Id. All parties moved for summary judgment. Id. at *1.

The Complaints in the instant actions were filed on March 26, 2010, and asserted the same two claims raised by the plaintiffs in the Related Actions. (See 10 Civ. 2734 Cmplt. (Dkt. No. 1); 10 Civ. 2735 Cmplt. (Dkt. No. 1))  Defendant asserted a counterclaim against each Plaintiff for breach of contract, as in the Related Actions. (10 Civ. 2734 Answer (Dkt. No. 10); 10 Civ. 2735 Answer (Dkt. No. 9))

Because Plaintiffs in the instant actions raised the same claims pleaded in the Related Actions, this Court stayed proceedings in the instant actions pending resolution of the cross-motions for summary judgment in the Related Actions. (Dkt. No. 13)

On March 19, 2012, this Court granted plaintiffs' motions for summary judgment and denied Defendant's cross-motions for summary judgment in the Related Actions, holding that Defendant's failure to include tax lot numbers in the purchase agreements executed by plaintiffs constituted a violation of ILSA that permitted plaintiffs to rescind the purchase agreements and recover their deposits. Rai v. WB Imico Lexington Fee, LLC, 851 F. Supp. 2d 615, 626-28 (S.D.N.Y. 2012).

On February 8, 2013, Defendant moved for this Court to vacate its March 19, 2012 Memorandum Opinion and Order (the "March 2012 decision"), and to grant summary judgment in Defendant's favor, in light of the Second Circuit's intervening decision in Bacolitsas v. 86th & 3rd Owner, LLC, 702 F.3d 673 (2d Cir. 2012). See Rai, 2013 WL 5420940, at *1.

On September 27, 2013, this Court granted Defendant's motion to vacate the March 2012 decision, concluding that – given the holding and reasoning of Bacolitsas – Defendant had not been required under ILSA to include tax lot numbers in plaintiffs' purchase

6

agreements. Id. at *3-6. Plaintiffs were therefore not entitled to rescission on that ground. Id. at

*6. This Court likewise rejected plaintiffs' arguments that their purchase agreements were

revocable under Section 1703(d)(3) of ILSA – which relates to ILSA's liquidated damages

provision – because Plaintiffs had not demonstrated that Defendant had violated this provision.

See id. *6-8. Accordingly, Defendant's motion for summary judgment was granted as to all

plaintiffs except Aviral and Sangeeta Rai. Id. at *11.

    As to the Rai plaintiffs, however, the Court found that Defendant had violated

Section 1703(a)(1)(B) by failing to provide the Rais with a copy of the property report for their

condominium before they signed their purchase agreement. Id. at *8-10. Defendant argued that

it had satisfied its obligations under this section by sending the property report to the Rais'

attorney. Id. at *9. This Court rejected that argument, finding that the text and legislative

history of ILSA indicate that the developer is required to furnish the property report to the

purchaser, and that delivery to the Rais' attorney was not sufficient to fulfill this requirement.

Id. at *9-10.

    Accordingly, the Rai plaintiffs were granted summary judgment, and Defendant's

motion for summary judgment on its breach of contract counterclaim against the Rais was

denied. Id. at *11.

    After the September 2013 decision, Plaintiffs in the instant actions – with

Defendant's consent – filed Amended Complaints. (10 Civ. 2734 Am. Cmplt. (Dkt. No. 21); 10

Civ. 2735 Am. Cmplt. (Dkt. No. 19)) In addition to the two claims previously asserted, Plaintiffs

now allege that Defendant violated Section 1703(a)(1)(B) of ILSA by failing to provide them

with copies of the property report for their condominium units before they signed their purchase

agreements. (10 Civ. 2734 Am. Cmplt. (Dkt. No. 21) ¶¶ 67-78; 10 Civ. 2735 Am. Cmplt. (Dkt.

7

No. 19) ¶¶ 67-78)  Defendant asserts a counterclaim for breach of contract.  (10 Civ. 2734

Answer (Dkt. No. 22); 10 Civ. 2735 Answer (Dkt. No. 20))

All parties have moved for summary judgment.  (Dkt. Nos. 31, 34)

## DISCUSSION

## I.    LEGAL STANDARD

Summary judgment is warranted when the moving party shows that "there is no

genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes

where the evidence is such that a reasonable jury could decide in the non-movant's favor."

Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d

140, 145 (2d Cir. 2007)).  "The same standard applies where, as here, the parties filed cross-

motions for summary judgment. . . ."  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d

Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)).

## II.   THE PURCHASE AGREEMENTS DO NOT
## VIOLATE ILSA'S LOT DESCRIPTION REQUIREMENT

Plaintiffs claim that Defendant violated Section 1703(d)(1) of ILSA by failing to

provide a description of their units in the purchase agreements that clearly identifies the units and

is in a form acceptable for recording.[4]  (10 Civ. 2734 Am. Cmplt. (Dkt. No. 21) ¶¶ 45-56; 10

---

[4]  Section 1703(d)(1) provides that

[a]ny contract or agreement which is for the sale or lease of a [non-exempt] lot . . .
which does not provide . . . a description of the lot which makes such lot clearly
identifiable and which is in a form acceptable for recording by the appropriate
public official responsible for maintaining land records in the jurisdiction in
which the lot is located . . . may be revoked at the option of the purchaser or
lessee for two years from the date of the signing of such contract or agreement.

15 U.S.C. § 1703(d)(1).

Civ. 2735 Am. Cmplt. (Dkt. No. 19) ¶¶ 45-56)  More specifically, "[l]ike the plaintiffs in the Related Actions, Plaintiffs here assert that Defendant violated § 1703(d)(1) by failing to include the tax lot numbers in the purchase agreements."  (Pltf. Br. (Dkt. No. 43) at 2)

For the reasons set forth in this Court's September 2013 decision, the argument that Plaintiff's purchase agreements violate ILSA because they do not contain tax lot numbers, and therefore are not suitable for recording, "cannot stand under Bacolitsas."  Rai, 2013 WL 5420940, at *5.  Accordingly, Plaintiffs are not entitled to rescission on the ground that Defendant made inadequate disclosures under Section 1703(d)(1) of ILSA, and Defendant is entitled to summary judgment on Count I of the Amended Complaint.

## III.    THE PURCHASE AGREEMENTS DO NOT VIOLATE ILSA'S LIQUIDATED DAMAGES CLAUSE

Defendant argues that it is entitled to summary judgment on Plaintiffs' second claim – which alleges that Defendant's description of purchasers' refund rights in the purchase agreements violate Section 1703(d)(3) of ILSA – "for the same reasons that the identical claim[s] were dismissed in the [Related] [A]ctions."  (Def. Br. (Dkt. No. 42) at 13-14)  Plaintiffs have not moved for summary judgment on this claim and "do not oppose . . . Defendant's motion for summary judgment . . . seek[ing] dismissal of their second claim," "recogniz[ing] that the Second Circuit's recent decision in Bacolitsas . . . has determined that the challenged description of refund rights is not a violation of ILSA."  (Pltf. Opp. (Dkt. No. 50) at 1 n.1)  Accordingly, Defendant is entitled to summary judgment on Count II of the Amended Complaint.

## IV.    PLAINTIFFS' CLAIM THAT DEFENDANT VIOLATED ILSA'S DISCLOSURE REQUIREMENTS BY FAILING TO FURNISH A COPY OF THE PROPERTY REPORT TO PLAINTIFFS

Plaintiffs allege that – like the Rai plaintiffs -- they are entitled to rescind their purchase agreements because Defendant violated Section 1703(a)(1)(B) of ILSA by not

providing them with a copy of the property report for their condominium units before they

signed their purchase agreements. (Pltf. Br. (Dkt. No. 43) at 3-6)  Defendant maintains,

however, that ILSA was satisfied because (1) the property report was provided to Plaintiffs'

attorneys, and (2) Plaintiffs signed Purchaser Receipts acknowledging that they had in fact

received copies of the property report. (Def. Br. (Dkt. No. 42) at 6-11)

        Pursuant to Section 1703(a)(1)(B) of ILSA, it is unlawful for a developer to sell a

lot "unless a printed property report . . . has been furnished to the purchaser . . . in advance of the

signing of any contract or agreement by such purchaser. . . ." 15 U.S.C. § 1703(a)(1)(B)

(emphasis added).  Section 1703(c) further provides that if "the property report has not been

given to the purchaser . . . in advance of his or her signing such contract or agreement, such

contract or agreement may be revoked at the option of the purchaser . . . within two years from

the date of such signing. . . ."[5]  15 U.S.C. § 1703(c).

        In the September 2013 decision, this Court granted the Rai plaintiffs' motion for

summary judgment, finding that "Defendant violated Section 1703(a)(1)(B) of ILSA by failing

to furnish a copy of the property report to the Rais before they signed their purchase agreement.

Evidence that the property report was provided to the Rai Plaintiffs' attorney is not sufficient to

satisfy this requirement of the Act." Rai, 2013 WL 5420940, at *10.  In reaching this

conclusion, this Court noted that "there is no evidence that the Rais received the property

report." Id. at *9 n.18.  Both of the Rais had submitted declarations stating that they had "'never

[been] provided with or reviewed a [copy of the] HUD Property Report prior to executing the

purchase agreement.'" Id. (quoting declarations of Aviral and Sangeeta Rai).

_____

[5]  It is undisputed that Plaintiffs revoked their purchase agreements within two years of signing
them.  (See Joint Stip. (Dkt. No. 45) ¶¶ 10, 14)

In concluding that Defendant had violated Section 1703(a)(1)(B), this Court also cited Department of Housing and Urban Development regulations that "require developers to provide and retain a property report 'purchaser receipt' form that states: 'We must give you a copy of this Property Report and give you an opportunity to read it before you sign any contract or agreement. By signing this receipt, you acknowledge that you have received a copy of our Property Report." Id. at *10 (quoting 24 C.F.R. § 1710.118(a), (b) (emphasis in Rai omitted)). The Court noted that there was no evidence that the Rais had ever signed a receipt acknowledging that they had received a copy of the property report. Id. at *10 n.21.

The facts here are different in important respects. While it is undisputed that Defendant did not directly provide the property reports to Plaintiffs (Joint Stip. (Dkt. No. 45) ¶¶ 8-9), it is also undisputed that Plaintiffs signed a receipt indicating that they had in fact received a property report for their condominium before executing the purchase agreements. (Id. ¶¶ 8-9 & Exs. B, D) Moreover, the Tackneys have (1) admitted that their lawyer received a copy of the property report (id. at ¶ 9), and (2) have not denied that they received a copy of the report prior to executing the purchase agreement. Instead, the Tackneys' declarations are carefully worded to say that Defendant did not send a copy of the property report "directly to me." (See C. Tackney Decl. (Dkt. No. 35) ¶ 4; A. Tackney (Dkt. No. 37) ¶ 4) Given the signed receipt, and the Tackneys' failure to deny having received a copy of the report, this Court finds that there is no material issue of fact as to whether the Tackneys received a copy of the property report for their condominium unit before they executed the purchase agreement. They did.

Abrams and Hwang deny that they ever received a copy of the property report for their condominium unit. (Abrams Decl. (Dkt. No. 39) ¶¶ 5-7; Hwang Decl. (Dkt. No. 41) ¶¶ 5-7) It is undisputed, however, that they signed a receipt – before executing their purchase agreement

– representing that they had in fact received a copy of the property report for their unit. This Court concludes that Abrams and Hwang are estopped from denying now that they had received a copy of the property report before executing the purchase agreement.

> Under Federal common law,
>
> [t]he elements of equitable estoppel . . . are as follows:  1) the party to be estopped misrepresented material facts; 2) the party to be estopped was aware of the true facts; 3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; 4) the party asserting the estoppel did not know, nor should it have known, the true facts; and 5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

Fortune v. Med. Assocs. of Woodhull, P.C., 803 F. Supp. 636, 643 (E.D.N.Y. 1992) (internal quotations and citations omitted).

All the elements of equitable estoppel are present here.  Assuming that Abrams and Hwang were not provided with a copy of the property report – contrary to the receipt they signed – they misrepresented a material fact.  Moreover, Abrams and Hwang knew the true facts concerning whether or not they had received a copy of the property report.  In signing the receipt prior to executing the purchase agreement, Abrams and Hwang had reason to believe that Defendant would rely on their representation.  The receipt they signed informed them that Defendant was required to give them a copy of the property report before they signed the purchase agreement.  (Joint Stip. (Dkt. No. 45) Exs. B, D)  Defendant likewise "did not know, nor should it have known," that Abrams and Hwang had never received a copy of the property report.  Defendant had sent the property report to a lawyer whom it believed represented Abrams and Hwang.  (Id., Ex. A; Feb. 21, 2014 Genack Aff. (Dkt. No. 47) ¶ 3 & Ex. N)  Finally, Defendant "reasonably and detrimentally relied on" Abrams and Hwang's misrepresentation.

Having concluded that there is no material issue of fact concerning the Tackneys' receipt of the property report, and that Abrams and Hwang are estopped from denying their receipt of the property report, what remains is to determine the legal significance of these findings.

While this Court finds, for the reasons set forth in Rai, 2013 WL 5420940, *9-10, that a developer does not satisfy the disclosure requirements of Section 1703(a)(1)(B) of ILSA by providing a copy of the property report to the purchaser's lawyer, nothing in the statute, its legislative history, or in case law suggests that a purchaser's actual possession of a property report prior to executing a purchase agreement – even if provided by counsel or another source rather than directly by the developer – is insufficient to satisfy the statute.

As the Second Circuit and other courts have stated, the core purpose of ILSA is to ensure that purchasers have the information they need in order to make an informed decision, and thereby to prevent false and deceptive practices in the sale of real property. See, e.g., Bacolitsas, 702 F.3d at 680 ("One of the core functions of ILSA is 'to prevent false and deceptive practices in the sale of . . . land by requiring developers to disclose information needed by potential buyers.'" (quoting Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778 (1976))) (alteration in Bacolitsas); Bodansky v. Fifth on Park Condo, LLC, 635 F.3d 75, 83 (2d Cir. 2011) (purpose of ILSA is to ensure that potential buyers will actually receive the information they need "to make an informed decision at the time they sign a contract to purchase . . . a lot"); Sun Kyung Ahn v. Merrifield Town Ctr. Ltd. P'ship, 584 F. Supp. 2d 848, 854-55 (E.D. Va. 2008) ("Taken together, [ILSA's property report disclosure] provisions reflect Congress's recognition that the need for buyer protection is critical prior to the time the buyer makes the decision to sign and incur obligations; accordingly, the seller must provide the

property report before the buyer signs the contract so the buyer can make an informed decision.").

Here, Defendant -- consistent with HUD regulations -- took steps to ensure that Plaintiffs had received a copy of the property report for their condominium units. Plaintiffs represented to Defendant, in writing, that they had in fact received those property reports before they executed their purchase agreements. Assuming arguendo that the property reports were provided to Plaintiffs not directly by Defendant, but instead through counsel or some other source, the statutory purpose of Section 1703(a)(1)(B) was nonetheless fully served. Stated another way, the fact that a purchaser obtains a property report through his or her lawyer or some other source does not mean that the disclosure requirements of ILSA have not been met. The purchaser has nonetheless been equipped to make an informed decision about purchasing real property.

Defendant is entitled to summary judgment on Count III of the Amended Complaint and to summary judgment on its breach of contract counterclaim.

## CONCLUSION

Defendant's motions for summary judgment on Plaintiffs' claims and on its breach of contract counterclaim are granted. Plaintiffs' motions for summary judgment are denied. The Clerk of the Court is directed to terminate the motions (10 Civ. 2734 Dkt. Nos. 31, 34; 10 Civ. 2735 Dkt. Nos. 29, 32).

The following briefing schedule will apply to any application for damages, attorneys' fees, and costs by Defendant:

1. Defendant's motion is due on **October 6, 2014**.

2. Plaintiffs' opposition is due on **October 13, 2014**.

14

3.  Defendant's reply, if any, is due on **October 20, 2014**.

Dated: New York, New York
        September 19, 2014

                                        SO ORDERED.

                                        Paul A. Gardephe
                                        _____
                                        Paul G. Gardephe
                                        United States District Judge