USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER TACKNEY and ANGELA TACKNEY,<br><br>Plaintiffs and Counter-Defendants,<br><br>- against -<br><br>WB IMICO LEXINGTON FEE, LLC,<br><br>Defendant and Counter-Claimant. | **MEMORANDUM OPINION & ORDER**<br><br>10 Civ. 2734 (PGG) |
| WILLIAM ABRAMS and SOO WON HWANG,<br><br>Plaintiffs and Counter-Defendants,<br><br>- against -<br><br>WB IMICO LEXINGTON FEE, LLC,<br><br>Defendant and Counter-Claimant. | 10 Civ. 2735 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiffs in these actions are purchasers of condominium units in "The Lucida," a condominium development in Manhattan sponsored and developed by Defendant WB Imico Lexington Fee, LLC. Based on this Court's September 19, 2014 grant of summary judgment in its favor, Defendant has made an application for (1) attorneys' fees based on the purchase agreements signed by each Plaintiff, and (2) the interest earned or accrued on the Plaintiffs' contractual down payments for their condominium units. (Dkt. No. 52)

For the reasons stated below, Defendant will be awarded its reasonable attorneys' fees, and Plaintiffs will be awarded the interest that has accrued on their down payments.

## BACKGROUND

### I.  FACTS[1]

The Lucida is a condominium development located at 151 East 85th Street, New York, New York. (Joint Stip. (Dkt. No. 45) ¶ 2) Each Plaintiff executed a substantially similar purchase agreement for a condominium unit in The Lucida, and each paid Defendant a deposit pursuant to those agreements. (Id. ¶¶ 10, 13) The Tackneys executed their agreement on July 26, 2007, and Abrams and Hwang executed their agreement on July 30, 2007. (Id. ¶ 10)

Within two years of executing their respective purchase agreements, Plaintiffs sent notices to Defendant purporting to revoke their purchase agreements due to Defendant's alleged failure to comply with disclosure requirements set forth in the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-20 ("ILSA" or the "Act"). See id. ¶ 14. The revocation letter sent by Abrams and Hwang is dated July 27, 2009, and the Tackneys' revocation letter is dated July 24, 2009. (Id.) Plaintiffs likewise demanded the immediate return of their respective deposits. (Id.) Defendant did not return to Plaintiffs any portion of their deposits. (Id. ¶ 15)

On March 26, 2010, Plaintiffs filed these actions, alleging that Defendant violated several disclosure provisions of ILSA in connection with the sale of the condominiums, and that as a result Plaintiffs were entitled to rescind their purchase agreements and recover their deposits pursuant to ILSA. (10 Civ. 2734 Am. Cmplt. (Dkt. No. 21); 10 Civ. 2735 Am. Cmplt. (Dkt. No. 19)) Defendant argued that it had complied with ILSA's requirements and asserted

---

[1] The Court's factual statement is drawn primarily from a Stipulation of Fact entered into by all parties for purposes of summary judgment. (Dkt. No. 45) Familiarity with this Court's prior opinions and orders in these and related actions is presumed. See Tackney v. WB Imico Lexington Fee, LLC, Nos. 10 Civ. 2734 (PGG), 10 Civ. 2735 (PGG), 2014 WL 4670865 (S.D.N.Y. Sept. 19, 2014); Rai v. WB Imico Lexington Fee, LLC, Nos. 09 Civ. 9586 (PGG), 09 Civ. 9609 (PGG), 09 Civ. 9610 (PGG), 09 Civ. 9611 (PGG), 09 Civ. 9612 (PGG), 2013 WL 5420940 (S.D.N.Y. Sept. 27, 2013).

counterclaims for breach of contract, alleging that Plaintiffs refused to pay the balance owed for the units and to close title as required by their purchase agreements. (10 Civ. 2734 Answer (Dkt. No. 22); 10 Civ. 2735 Answer (Dkt. No. 20))

After the complaints in these actions were filed, the initial conference was adjourned sine die pending resolution of summary judgment motions in five related actions ("the Related Actions")[2] that had been brought against Defendant by other purchasers of units in The Lucida. (10 Civ. 2734 Oct. 11, 2011 Order (Dkt. No. 13); 10 Civ. 2735 Oct. 11, 2011 Order (Dkt. No. 11))

On September 27, 2013, this Court issued a decision granting Defendant summary judgment in four of the Related Actions, awarding Defendant the purchasers' deposits in each case. See Rai, 2013 WL 5420940, at *11 (the "September 2013 decision"). This Court nonetheless determined that the purchasers – and not Defendant – were entitled to the interest that had accrued on their deposits while the cases had been pending, based on the statutory damages cap in ILSA. See id.

On January 13, 2014, Plaintiffs in the instant action filed amended complaints. (10 Civ. 2734 Am. Cmplt. (Dkt. No. 21); 10 Civ. 2735 Am. Cmplt. (Dkt. No. 19))  On January 24, 2014, Defendant filed answers and asserted counterclaims for breach of contract. (10 Civ. 2734 Answer (Dkt. No. 22); 10 Civ. 2735 Answer (Dkt. No. 20))

On January 24, 2014, Plaintiffs moved for summary judgment on the first and third claims of their Amended Complaints, which alleged that Defendant had violated ILSA by

---

[2] The Related Actions are Rai v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9586 (PGG), Hakell Limited Inc. v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9609 (PGG), Benhamou v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9610 (PGG), Bauer v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9611 (PGG), and Ezzes v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9512 (PGG).

failing to adequately describe the purchased units in Plaintiffs' purchase agreements, and by failing to deliver the property report for The Lucida to Plaintiffs before they executed their purchase agreements. (Pltf. Br. (Dkt. No. 43)[3]) Defendant moved for summary judgment on all of Plaintiffs' claims and on its breach of contract counterclaims. (Def. Br. (Dkt. No. 42))

On September 19, 2014, this Court granted Defendant's motions for summary judgment on Plaintiffs' claims and on its breach of contract counterclaims. Tackney, 2014 WL 4670865. This Court then directed Defendant to submit any application for damages, attorneys' fees, and costs by October 6, 2014. Id. at *8.

Defendant seeks an order awarding it (1) attorneys' fees, based on the purchase agreements signed by each Plaintiff, and (2) the interest earned or accrued on Plaintiffs' contractual down payments. (Dkt. No. 52)

For the reasons stated below, this Court will award Defendant its reasonable attorneys' fees; the interest earned or accrued on Plaintiffs' down payments, however, will be awarded to Plaintiffs.

## DISCUSSION

### I.   DEFENDANT IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES

Defendant WB Imico seeks an attorneys' fee award pursuant to the purchase agreements executed by each Plaintiff. (Mot. for Att. Fees (Dkt. No. 52)) This agreement provides that

> [the purchaser] shall be obligated to reimburse [WB Imico] for any legal fees and disbursements incurred by [WB Imico] in defending [its] rights under this Agreement or, in the event [the purchaser] defaults under this Agreement beyond

---

[3] Plaintiffs filed joint papers both at summary judgment and in connection with the instant motion. Unless otherwise indicated, citations to these joint submissions will be to the docket numbers on the Tackney docket (No. 10 Civ. 2734).

4

> any applicable grace period, in canceling this agreement or otherwise enforcing [the purchaser's] obligations hereunder.

(Moss Decl. (Dkt. No. 55) Exs. A & B, "Purchase Agreements," at 12)  Plaintiffs do not dispute that their agreements require them to pay Defendant's reasonable attorneys' fees. See Pltf. Br. (Dkt. No. 56).  Plaintiffs dispute only the amount of attorneys' fees for which they should be held liable, arguing that Defendant's attorneys billed excessive hours and performed duplicative work. (Id.)

## II.  CALCULATION OF A REASONABLE ATTORNEYS' FEE AWARD

Schlam Stone & Dolan, LLP ("SS&D") represented Defendant in both the Tackney and Abrams-Hwang matters. (Dolan Decl. (Dkt. No. 54) ¶ 1)  Defendant requests a total of $60,642 for 155.4 hours spent on this matter by three SS&D attorneys and two paralegals.[4]  See id. Ex. A at 1-3.

### A.  Applicable Law

"As a general matter of New York law, . . . when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable."  F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987); see Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (same).  "However, notwithstanding th[is] general proposition . . . , the amount to be awarded as 'an attorney's fee is within the discretion of the court.'"  Terra Energy & Resources

---

[4] Defendant's request for an award of $60,923.25 reflects a mathematical error.  A January 20, 2014 billing entry for Richard H. Dolan incorrectly charges $843.75 for 1.2 hours of work. (Dolan Decl. (Dkt. No. 54) Ex. A at 2)  Dolan's billing rate for this entry was $562.50 per hour. (Id.)  Accordingly, 1.2 hours of Dolan's time is worth $675, and not the $843.75 reflected in the billing records.  With this correction, Defendant seeks a total award of $60,642 for 155.4 hours of work.  See id. at 1-3.

5

Technologies, Inc. v. Terralinna Pty. Ltd., No. 12 Civ. 1337 (KNF), 2014 WL 6632937, at *4 (S.D.N.Y. Nov. 24, 2014) (quoting Gamache v. Steinhaus, 7 A.D.3d 525, 527 (2d Dept. 2004)). Indeed, "'[w]hen determining a fee award based upon a contractual attorneys' fees agreement between the parties . . . courts have "broad discretion" and need not follow a specific formula. As such, the Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees.'" Union Cent. Life Ins. Co. v. Berger, No. 10 Civ. 8408 (PGG), 2013 WL 6571079, at *2 (S.D.N.Y. Dec. 13, 2013) (quoting Clarendon Nat. Ins. Co. v. Advance Underwriting Managers Agency, Inc., No. 06 Civ. 15361 (BSJ), 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting U.S. Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004))).

In determining whether a requested fee award is reasonable, the starting point is the calculation of the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008). This "initial estimate" is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "In determining a reasonable rate, a court 'may rely on its own knowledge of comparable rates charged by lawyers in the district.'" Merck Eprova AG v. Brookstone Pharm., LLC, No. 09 Civ. 9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013) (quoting Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that we and other courts have identified as relevant," including "[t]he reasonable hourly rate . . . a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190 (emphasis in original). Courts also consider "the

6

complexity and difficulty of the case, . . . the resources required to prosecute the case effectively. . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Id. at 184.

"Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of [movant's] success in the litigation." Robinson v. City of New York, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009). A court need not "'become enmeshed in a meticulous analysis of every detailed facet of the professional representation'" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 164 n.8 (2d Cir. 1980) (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)), nor should "[a] request for attorney's fees . . . result in a second major litigation." Hensley, 461 U.S. at 437. The burden is ultimately on the movant to demonstrate the reasonableness of the hours spent and rates asserted. See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday, 42 F.3d at 134.

    B.    **Hourly Rates**

Defendant seeks $60,642 for 155.4 hours spent on the Tackney and Abrams-Hwang matters by SS&D attorneys and paralegals. (Dolan Decl. (Dkt. No. 54) Ex. A at 1-3) The attorneys working on these matters – two partners and one associate – billed $57,942 for 135.4 hours of work. See id.; Dolan Decl. (Dkt. No. 54) ¶ 9.

Partner billings amounted to 47.8 hours, representing approximately 31% of the total hours spent by SS&D on these matters. Partner Richard Dolan billed 38.9 hours at rates of either $517.50 per hour or $562.50 per hour. (Id. Ex. A at 1-3) Partner Thomas Kissane billed 8.9 hours at a rate of $517.50 per hour. (Id.)

SS&D associate Niall O'Murchadha worked on these matters. (Id.) O'Murchadha's billing rate is $360 per hour, and he spent 87.6 hours on these cases. (Id.) The paralegals – Samuel Scarrit-Selma and Jae-Hee H. Honey – spent a total of 20 hours on these matters, working at a rate of $135 per hour. See id. O'Murchadha and the paralegals account for approximately 69% of SS&D's total hours.

The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a "reasonable, paying client would be willing to pay." Arbor Hill, 522 F.3d at 184. "[D]istrict courts should use the 'prevailing [hourly rate] in the community' in calculating . . . the presumptively reasonable fee." Id. at 190 (second alteration in original). "[T]he 'community' for purposes of this calculation is the district where the district court sits." Id. (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). More specifically, courts should consider the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). In determining what rates are reasonable, a court may also rely on evidence as to the rates counsel typically charges, Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005), and "its own knowledge of comparable rates charged by lawyers in the district." Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing

Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682 (LAP), 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)).

Here, all three of the SS&D attorneys are highly experienced in complex commercial litigation. Dolan has been practicing law for four decades, while Kissane has more than twenty-five years of experience. (Dolan Decl. (Dkt. No. 54) Ex. B) O'Murchadha graduated from law school in 2003 and has significant experience across a wide range of civil matters. (Id.)

The rates for the SS&D attorneys are within the range of rates that have been approved by courts in this District.[5] See, e.g., Sidley Holding Corp. v. Ruderman, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), adopted, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (noting that "recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals") and citing Edmonds v. Seavey, No. 08 Civ. 5646 (HB) (JCF), 2009 WL 1598794, at *2 (S.D.N.Y. June 5, 2009), aff'd, 2009 WL 2150971 (S.D.N.Y. July 20, 2009), and RBFC One, LLC v. Zeeks, Inc., No. 02 Civ. 3231 (DFE), 2005 WL 2105541, at *2 (S.D.N.Y. Sept. 1, 2005)); In re AOL Time Warner Shareholder Derivative Litigation, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) ("Counsel use hourly rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level attorneys and from $300 to $850 for partners. These rates, though relatively high, fall within the range of those commanded by leading lawyers in the Southern District, particularly those practicing at large firms or with high

---

[5] Plaintiffs have not argued that SS&D's attorney billing rates are unreasonable.

profiles."). Accordingly, the Court concludes that the rates SS&D charged for its attorneys are reasonable.

SS&D charged $135 per hour for the work done by its paralegals. Although SS&D has not provided biographies for its paralegals – an omission which Plaintiffs claim should result in a reduction of the fee award (Pltf. Br. (Dkt. No. 56) at 5) – this Court nevertheless finds this rate to be reasonable, as it is within the range of paralegal rates approved by other judges in this District. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013) (finding $140 hourly paralegal rate reasonable); N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc., No. 09 Civ. 9479 (JGK) (AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010) ($125 per hour is a reasonable hourly rate for paralegal services); Sidley Holding Corp, 2009 WL 6047187, at *26 (approving $125 paralegal hourly rate); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, at *4 (S.D.N.Y. Aug. 11, 2009) (same).

### C. **Staffing and Time Expended**

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The Court will exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "its own familiarity with the case . . . and its experience generally." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

10

While "[t]he use of multiple attorneys . . . is not unreasonable per se," Simmonds v. N.Y.C. Dep't of Corr., No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (quoting Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984)) (alteration in original), assigning numerous attorneys to a simple and straightforward matter presents a serious risk of inefficiency, duplication, and unnecessary billing. See id. at *6-7. As the Second Circuit has recognized,

> [i]n assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion . . . . [A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1146. The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." Id.; see also Sullivan v. Syracuse Hous. Auth., No. 89 Civ. 1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3, 1993) (district court must ensure that fee award reflects only work that was "necessary to the litigation" and "a cost efficient use of co-counsel and outside counsel").

Plaintiffs argue that SS&D's billings in this matter were excessive and duplicative, relying primarily on the similarity between these matters and the Related Actions. (Pltf. Br. (Dkt. No. 56) at 2-5) Because many of the issues briefed in the instant cases are similar to issues litigated in the Related Actions, Plaintiffs claim that it was excessive for SS&D to spend 155.4 hours litigating the instant cases. (Id. at 2-3) This Court disagrees.

These cases were originally filed in 2010 – nearly five years ago – and involved a complex statute that had not previously been the subject of extensive judicial analysis. Accordingly, these cases do not present simple claims for breach of contract. The complexity of

11

the legal issues under ILSA is reflected in the case law interpreting it. The Second Circuit repeatedly has rejected district court interpretations of the Act. See, e.g., Bacolitsas v. 86th and 3rd Owner, LLC, 702 F.3d 673 (2d Cir. 2012); Bodansky v. Fifth on Park Condo, LLC, 635 F.3d 75 (2d Cir. 2011). While the legal issues in the instant cases are in many respects similar to the issues in the Related Actions, the instant cases presented important factual differences that required somewhat different analysis under ILSA. See Tackney, 2014 WL 4670865, at *6 ("The facts here are different [from the facts in the Related Actions] in important respects."). For example, the determination of whether Plaintiffs properly received the property report for purposes of ILSA involved a difficult statutory interpretation question that was not analyzed in the Related Actions. See id. at *6-8. This issue and others required substantial research and careful preparation of briefs and supporting materials. Accordingly, this Court finds that the 155.4 hours billed by SS&D over the five-year life of these cases were "reasonably needed to prevail in the litigation." New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1146.

Plaintiffs also argue that the fee award should be reduced because SS&D staffed these matters with two partners and one associate, resulting in partners performing work that could have been performed by associates. (Pltf. Br. (Dkt. No. 56) at 2-5) Plaintiffs further argue that the partners' collaboration in preparing Defendant's papers in these cases resulted in duplicative billing. See id.

Although two partners and one associate billed time to these cases, the work appears to have been performed in an efficient manner, and there is no evidence of duplicative billing. O'Murchadha – the associate – and the paralegals together account for approximately 69% of the total number of hours billed. Accordingly, most of the work at issue here was performed by personnel who bill at much lower rates than SS&D partners. Moreover, both

12

partners in the instant cases worked extensively on the Related Actions. Undoubtedly this increased the efficiency of SS&D's representation.

Moreover, the detailed billing records submitted by Defendant (see Dolan Decl. (Dkt. No. 54) Ex. A) do not show duplication of effort. While all three attorneys spent time preparing, reviewing, and editing Defendant's papers, O'Murchadha and Dolan performed the lion's share of this work – 126.5 hours to Kissane's 8.9 hours. See id. Given his experience in the Related Actions, it was appropriate for Kissane to spend this limited amount of time strategizing with the other attorneys and providing feedback and edits on their work. Accordingly, this Court finds that the total number of hours expended by SS&D is reasonable and concludes that Defendant is entitled to recover $60,642 in attorneys' fees.

### III. PLAINTIFFS ARE ENTITLED TO THE INTEREST THAT HAS ACCRUED ON THEIR DEPOSITS

After this Court granted Defendant's motion for summary judgment, the escrow agent holding Plaintiffs' respective down payments released the escrowed funds to Defendant, including interest. (Dolan Decl. (Dkt. No. 54) ¶ 13) As of that date, interest on the Tackney plaintiffs' down payment amounted to $23,924.79, and interest on the Abrams-Hwang plaintiffs' down payment amounted to $29,148.70. (Id.) Given this Court's ruling in the Related Actions that the purchasers were entitled to a refund of the accrued interest on their down payments, see Rai, 2013 WL 5420940, at *11, the accrued interest related to the Tackney and Abrams-Hwang down payments was returned to escrow pending this Court's resolution of Defendant's instant motion. (Dolan Decl. (Dkt. No. 54) ¶ 13)

Defendant argues that it is entitled to keep the interest that has accrued on Plaintiffs' deposits while they were held in escrow. (Def. Br. (Dkt. No. 53) at 8) This Court addressed this same issue in the Related Actions and awarded purchasers Haskell, Benhamou,

13

Bauer, and Ezzes the interest on their deposits. Rai, 2013 WL 5420940, at *11. Although this Court ruled in each of those cases that Defendant was entitled to keep the purchaser's deposit, this Court nonetheless ruled that the purchasers were entitled to the interest that had accrued on their deposits:

> Section 1703(d)(3) authorizes the Court to award Defendant the greater of 15% of the purchase price of the units or Defendant's actual damages. Defendant has not pled any damages. The deposits paid by each Plaintiff amount to exactly 15% of the purchase price of their unit. [Accordingly], any interest earned on the deposits must be returned to Plaintiffs.

Id. at *11 n.23.

Defendant argues that this Court erred in its interpretation of Section 1703(d)(3) because that statute "direct[s] . . . that interest [is] to be excluded when calculating the statutory cap." (Def. Br. (Dkt. No. 53) at 9) Defendant further contends that, as to interest, the parties' agreement – which provides "that any interest accrued on the down payment[s] [is] payable to whichever party [is] entitled to receive the principal amount of the down payment" – controls. Id. Defendant's argument is not persuasive.

Defendant is correct that "interest [is] to be excluded when calculating the statutory cap" on damages under ILSA. (Def. Br. (Dkt. No. 53) at 9) This conclusion does not render void Section 1703(d)(3)'s requirement that Defendant must refund "any amount which remains" after calculating the statutory cap, however. See 15 U.S.C. § 1703(d)(3). Here, what remains after calculating the statutory damages under Section 1703(d)(3) is the interest earned on Plaintiffs' deposits. Those amounts must be refunded to Plaintiffs.

Section 1703(d)(3) provides that

> if a purchaser or lessee loses rights and interest in the lot as a result of a default or breach of the contract or agreement which occurs after the purchaser or lessee has paid 15 per centum of the purchase price of the lot, excluding any interest <u>owed</u>

14

<u>under the contract or agreement</u>, the seller or lessor . . . shall refund to such purchaser or lessee any amount which remains after subtracting

    (A) 15 per centum of the purchase price of the lot, excluding any interest <u>owed under the contract or agreement</u>, or the amount of the damages incurred by the seller or lessor . . . , from

    (B) the amount paid by the purchaser or lessee with respect to the purchase price of the lot, excluding any interest <u>paid under the contract or agreement</u>.

15 U.S.C. § 1703(d)(3) (emphasis added)

        Section 1703(d)(3) states that in determining (1) what constitutes "15 per centum of the purchase price of the lot," a court only considers the lot's purchase price, or "sticker" price, and not additional amounts in interest a purchaser may owe under the purchase agreement; and (2) "the amount paid by the purchaser or lessee with respect to the purchase price of the lot," a court does not consider any interest payments made by the purchaser pursuant to the purchase agreement. A court may consider only payments that the purchaser has made toward the purchase price itself. <u>See</u> <u>id.</u> Courts calculate the statutory damages cap by applying these provisions. "[A]ny amount which remains" after calculating that cap must be refunded to the purchaser. <u>Id.</u>

        In the instant actions, it is undisputed that Plaintiffs' deposits amount to exactly 15% of the purchase price of their respective condominium units. It is likewise undisputed that Defendant has pled no damages. Accordingly, pursuant to Section 1703(d)(3), Defendant is entitled to keep Plaintiffs' full deposit. Defendant is entitled to no more, however, because the statute provides that the seller must refund "any amount which remains" after the 15% is subtracted. <u>Id.</u> Here, what remains is the interest that was earned on Plaintiffs' deposits. Accordingly, although Defendant is entitled to keep the deposits, Defendant must refund to Plaintiffs the interest earned on those deposits.

Defendant notes that the purchase agreements provide that "[i]f Sponsor elects to cancel this Agreement[,] Sponsor . . . may retain all sums deposited by Purchaser . . . together with interest earned thereon." (Moss Decl. (Dkt. No. 55) Exs. A & B, "Purchase Agreements," ¶ 15.2) Pursuant to explicit language in the purchase agreements, however, this provision controls only if ILSA does not apply. (Id.) Defendant does not dispute that ILSA applies here. See Def. Br. (Dkt. No. 53) at 8-9. Accordingly, Defendant must refund to Plaintiffs the interest earned on their deposits.

## **CONCLUSION**

For the reasons stated above, this Court awards Defendant $60,642 in attorneys' fees. This award is apportioned equally between the Tackney plaintiffs and the Abrams-Hwang plaintiffs, with each set of plaintiffs liable for 50% of the total fee award.[6]

Plaintiffs are entitled to the interest that has accrued while their respective deposits were held in escrow. For the Tackney plaintiffs, this amount includes accrued interest of $23,924.79. For the Abrams-Hwang plaintiffs, this amount includes accrued interest of $29,148.70. Plaintiffs are likewise entitled to whatever interest has accrued on the amounts that were returned to escrow after this Court's September 19, 2014 Order. See Dolan Decl. (Dkt. No. 54) ¶¶ 12, 13. The parties will submit proposed judgments to the Judgments Clerk by March 23, 2015, reflecting the appropriate amounts of interest as to each set of plaintiffs.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 52), to enter judgment, and to close these cases.

Dated: New York, New York  
      March 16, 2015

SO ORDERED.

_Paul G. Gardephe_  
Paul G. Gardephe  
United States District Judge

---

[6] Plaintiffs have requested that the attorneys' fee award be apportioned in this manner, see Pltf. Br. (Dkt. No. 56) at 5-7, and Defendant has accepted Plaintiffs' proposal that "a fee award . . . be split evenly between them." (Def. Reply Br. (Dkt. No. 57) at 1)